IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
CHARLES MAY,                  )
                              )
        Plaintiff,            )
                              )      CIVIL ACTION NO.
        v.                    )      2:19cv173-MHT
                              )          (WO)
CITY OF UNION SPRINGS,        )
                              )
        Defendant.            )
```

OPINION

Plaintiff Charles May, a former police officer for defendant City of Union Springs, Alabama, brought this lawsuit alleging that the city violated his rights under the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12112. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). This case is now before the court on the city's motion for summary judgment. The motion will be granted.

I.  SUMMARY-JUDGMENT STANDARD

"The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The court must view the admissible evidence "in the light most favorable to" the non-moving party and draw all "reasonable" inferences in favor of that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  In general, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita*, 475 U.S. at 587.


## II.   FACTUAL BACKGROUND

The facts, taken in the light most favorable to the May, are as follows.  May worked as a police officer for Union Springs, beginning in 2010.  In November 2014, while at work directing traffic, he was hit by a car and suffered injuries to his right shoulder, knee,

and hip and underwent multiple surgeries and
rehabilitative treatment over the following years.
After the first surgery on his knee, May spoke with the
Mayor of Union Springs, who told him, "[O]nce we find
out you're disabled, you're gone."  May Depo. (Doc.
18-3) at 25:2-20.[1]

For the first year he was out of work, May received
his full salary through a combination of workers'
compensation and a supplement from the city.  After the
first year, the city stopped paying the supplement, but
May continued to receive some workers' compensation
tied to his surgeries.  In August 2017, he filed a
workers' compensation lawsuit against the city.

The city had a policy allowing temporary light duty
work for injured workers.  The policy states:

"LIGHT DUTY: Any officer or employee who
becomes temporarily unable to perform his
duties due to an injury, illness, or pregnancy,

_____

1. On the court's citations to the depositions, the
page number refers to the page number in the
deposition, not the page number assigned by the ECF
system.

3

> may request in writing to the Chief of Police a
> light-duty assignment until cleared by a
> physician to return to regular duty. Such
> requests will be considered on a case-by-case
> basis, but requests originating from injuries
> suffered while on duty will receive preference
> over other requests. Officers placed on light
> duty will be assigned administrative duties and
> away from any exposure to hazardous
> situations."

City of Union Springs Police Dept. Rules and Regulations Manual (Doc. 18-2) at 9. At some point May's workers' compensation attorney inquired about whether he could come back to work in a light-duty position. The city initially told the attorney that it did not have a light-duty position.

By October 2017, a position as a dispatcher for the Union Springs police department had become available. That month, at the recommendation of the city's workers' compensation carrier, the city offered May the position, which the city considered to be light duty. Although the position of dispatcher ordinarily paid less than that of a police officer, the city offered May the position at his regular police-officer salary.

The police chief instructed an administrative assistant for the city's police department to call May and offer him the dispatcher position. May testified that, when offered the position, he responded that he was "still under a doctor's care and had not been released [to work] and was still having pain--having to take pain medication," May Depo. (Doc. 18-3) at 21:11-17; the caller said he would pass on the message and hung up.[2] May testified that he was not able to do any job at that time. May Depo. (Doc. 18-3) at 37:19-23 ("I wasn't able to do anything when they called and offered me that dispatch job."); *see also id.* at 26:8-23, 27:1-11 (explaining health conditions that prevented him from working when offered position of dispatcher, including pain and inability to sit for

---

2. The administrative assistant remembered the call differently. He testified: "Once I made contact with him, he advised me that he knew about the offer and his attorney advised him not to speak about it, his attorney would be in contact." Heard Depo. (Doc. 18-6) at 17:8-13. In any event, there is no dispute that May did not accept the dispatcher position as offered.

long periods of time).

The following month, having had no further discussions with May, the city terminated him. In a letter to May, the city explained that he was being terminated for refusing the available employment position as a dispatcher and for his inability to fulfill the essential functions of the job as a police officer. *See* Termination Letter (Doc. 18-2). May admits he was still not able to do the dispatch job or work as a police officer when terminated. *See* May Depo. (Doc. 18-3) at 29:12-19.

May's medical provider released him for return to full duty as a police officer in August 2018. May testified that he was not physically able to do "anything" until that time. *Id*. at 22:1-6. ("Q. When were you physically able to do anything? A. When I was released last year by Dr. Murphy.").

## III.  DISCUSSION

In his complaint, May brings two claims under the ADA: one for discriminatory discharge and another for failure to accommodate or participate in the accommodation process.  In his response to the motion for summary judgment, May frames his case as bringing a single claim that he was discriminated against when he was terminated based on disability without the city's having first engaged in an interactive process to determine a whether he could perform the dispatcher job with a reasonable accommodation.  Regardless of whether May's claims are described as one claim or two, the showing he must make is essentially the same.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To succeed on an ADA discrimination claim, May must show that, at the time of the alleged

discriminatory action, (1) he was "disabled" and (2) a
"qualified individual" as defined by the ADA, and (3)
that he was unlawfully discriminated against on account
of his disability.  *See Holly v. Clairson Indus.,
L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007);
*Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir.
2016) (citing *Wood v. Green*, 323 F.3d 1309, 1312 (11th
Cir. 2003)); see *also Hall v. Wal-Mart Assocs., Inc.*,
373 F. Supp. 2d 1267, 1270-71 (M.D. Ala. 2005)
(Thompson, J.) (citing *Pritchard v. Southern Co.
Services*, 92 F.3d 1130, 1132 (11th Cir. 1996)).  So
long as all other requirements of the statute are met,
"an employer's failure to reasonably accommodate a
disabled individual *itself* constitutes discrimination
under the ADA."  *Holly*, 492 F.3d at 1262 (italics in
original).

Union Springs does not dispute that May showed that
he was disabled at the relevant time, and the court
finds sufficient evidence of the same.  The city,

8

however, does take issue with whether May can meet the requirement of showing that he was a "qualified individual" at the time he was offered the position of dispatcher and discharged.

The ADA defines the term "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions are 'the fundamental job duties of the employment position the [disabled employee] holds or desires.'" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)(1)). "What constitutes a reasonable accommodation depends on the circumstances, but it may include 'job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position' among other things." *Frazier-White*, 818 F.3d at 1255 (quoting 42 U.S.C. § 12111(9)(B)).

9

In his response to the motion for summary judgment, May argues that he was a "qualified individual" because he would have been able to perform the dispatcher job with reasonable accommodations, and that such reasonable accommodations would have been determined had Union Springs engaged in an interactive process with him.  May does not identify any reasonable accommodations that might have allowed him to work as a dispatcher.

May bears the burden of showing that, at the time of his discharge, he was capable of performing the essential functions of the dispatcher position if given a reasonable accommodation.  More specifically, "[t]he plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas*, 257 F.3d at 1255–56 (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278,

1286 (11th Cir. 1997), and *Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir. 1997)).

May has not met that burden. As noted above, in his response to the motion for summary judgment, he does not identify any accommodation that would have allowed him to perform the dispatcher position (or the police officer position) at the relevant times. He has presented no evidence about the requirements of the dispatcher position and what accommodations could have been made to allow him to perform the essential functions of the position. Instead, he simply asks the court to speculate that, had the city engaged in an interactive process of determining an accommodation, some accommodation would have been available. Speculation cannot substitute for evidence at summary judgment. Indeed, May's own testimony undermines his argument that a reasonable accommodation would have been available had the city tried harder to find one: during his deposition, May testified that he was unable

11

to work as a dispatcher or police officer at the time he was offered the dispatcher position and when terminated, and that he was unable to work at all until the following year.

To the extent that May sought as an accommodation a further extended leave of absence, the law is not on his side. "The ADA covers people who can perform the essential functions of their jobs *presently or in the immediate future*." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (italics added) (citing *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997)). May had already been on a leave of absence for almost three years by the time he was offered the dispatcher position, and, at the time he was terminated, there was no definite timeline for when he would return. "An 'accommodation' is 'reasonable'--and, therefore, required under the ADA--only if it enables the employee to perform the essential functions of the job." *LaChance v. Duffy's*

*Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); *see also Lucas*, 257 F.3d at 1259–60.  While "a leave of absence might be a reasonable accommodation in some cases, ... an indefinite leave of absence"--particularly on top of three years of absence from the job--is not a reasonable accommodation, as it would not have enabled May to perform the essential functions of the job presently or in the immediate future.  *Wood*, 323 F.3d at 1314.  "Because the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder." *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) (citing *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) (additional citations omitted)).  Especially given his admission that he was unable to work until about nine months after he was

fired, no reasonable jury could conclude that May was a "qualified individual" under the ADA at the time he was offered the dispatcher position or at the time of his termination.

May argues that he should survive summary judgment because after offering him the dispatcher position, Union Springs did not engage in an interactive process for determining a reasonable accommodation that would have allowed him to take the position. The ADA implementing regulations anticipate that a reasonable accommodation often will need to be reached through an interactive process between the employer and the employee. The regulations provide:

> "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."

29 C.F.R. § 1630.2(o)(3).  The interpretive guidance to the ADA regulations similarly explains: "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.    The    appropriate    reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability."  29 C.F.R. Pt. 1630, App. (section titled "Process of Determining the Appropriate Reasonable Accommodation"); *see also id.* (describing process in detail).  The guidance further notes that, when "neither the individual requesting the accommodation nor the employer can readily identify the appropriate accommodation":

> "it may be necessary for the employer to initiate a more defined problem solving process ... as part of its reasonable effort to identify the appropriate reasonable accommodation.
>
> This process requires the individual assessment of both the particular job at issue, and the

> specific physical or mental limitations of the particular individual in need of reasonable accommodation. ...
>
> After assessing the relevant job, the employer, in consultation with the individual requesting the accommodation, should make an assessment of the specific limitations imposed by the disability on the individual's performance of the job's essential functions. This assessment will make it possible to ascertain the precise barrier to the employment opportunity which, in turn, will make it possible to determine the accommodation(s) that could alleviate or remove that barrier."

*Id.*

Based on the record, it appears that the type of interactive process envisioned by the regulations did not occur. The initial offer of the dispatcher position came after May's attorney's inquiry about light-duty work. After May responded negatively to the offer of the dispatcher position, the city admittedly did not seek a meeting with May and/or his attorney to discuss whether he might be able to take the position with some sort of further accommodation. Indeed, as May has pointed out, several city leaders, including

the one who decided to terminate his position, were unaware of the interactive process explained in the ADA implementing regulations.

A defendant's failure to engage in the interactive process may serve as adminicular evidence in support a claim for failure to reasonably accommodate a plaintiff's disability. *See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317–18 (3d Cir. 1999); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285-86 (7th Cir. 1996). However, regardless of whether a defendant has failed to engage in the interactive process, a plaintiff cannot succeed on a failure-to-accommodate claim unless he can show that he could have performed the relevant job with (or without) a reasonable accommodation. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (upholding grant of summary judgment despite defendant's alleged failure to engage in interactive

17

process because plaintiff did not demonstrate that she could have performed job with reasonable accommodation); *see also Frazier-White*, 818 F.3d at 1257-58; *Smith*, 180 F.3d at 1174; *Taylor*, 184 F.3d at 317–18.  Because May has not shown that he could have performed the essential functions of the police officer or dispatcher job with reasonable accommodations, summary judgment must be granted.

An appropriate judgment will be entered.

DONE, this the 15th day of April, 2021.

  /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE